IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JOSEPH VOLZ | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | NO. 09-0885 |
| | : | |
| GERALD L. ROZUM, THE DISTRICT | : | |
| ATTORNEY OF THE COUNTY OF | : | |
| PHILADELPHIA, and THE ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| PENNSYLVANIA, | : | |
| Respondents. | : | |

DuBOIS, J.					August 5, 2010

**M E M O R A N D U M**

**I.	INTRODUCTION**

Petitioner, John Joseph Volz, was found guilty after a non-jury trial of various offenses related to three incidents in 1996 in which he attempted to or succeeded in kidnapping and sexually assaulting young girls. On June 14, 1998, the Honorable Rayford R. Means of the Philadelphia Court of Common Pleas, who presided over the trial, sentenced petitioner to a total term of imprisonment of 87 to 174 years. Commonwealth v. Volz, No. 2902 EDA 2002, slip op. at 16-19 (Pa. Super. Ct. Oct. 29, 2003).

Following direct appeals and proceedings under the Pennsylvania Post-Conviction Relief Act ("PCRA"), petitioner filed a *pro se* Petition for Writ of Habeas Corpus By a Person in State Custody pursuant to 28 U.S.C. § 2254 in this Court on or about February 23, 2009.[1] Attached to

---

[1] The Petition for Habeas Corpus is dated February 20, 2009, but the cover letter with which petitioner transmitted the Petition to the Clerk of this Court is dated February 23, 2009. Under the mail box rule applicable in federal courts, a petitioner's *pro se* petition is deemed filed when he delivers it to prison authorities for mailing. See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Thus, the Petition for Habeas Corpus in this case is deemed filed as of February 23,

that Petition was Petitioner's Motion to Proceed Nunc Pro Tunc.[2]  United States Magistrate Judge David R. Strawbridge submitted to the Court a Report and Recommendation dated January 29, 2010 ("R & R") in which he recommended that the Petition be denied and dismissed. Petitioner filed Objections to the Report and Recommendation on March 19, 2010, which the Court addresses in this Memorandum.

**II.    DISCUSSION**

The facts of this case are described in detail in the R & R.  The Court will not repeat them in this Memorandum except as is necessary to explain its rulings on petitioner's Objections.

>    **A.    Petitioner's First Claim**: **Ineffective Assistance of Counsel for Failure to Call Joanmarie Donnelly As a Witness**

In his § 2254 Petition, petitioner argues that trial counsel was ineffective for failing to call as a witness his girlfriend at the time, Joanmarie Donelly, whose testimony he claims would have called into question the victims' identification of petitioner and his car.  The R & R concluded that this claim (a) was procedurally defaulted, as it was not properly presented as a layered ineffective assistance of counsel claim, and (b) was without merit, as Donnelly's testimony was unlikely to affect the outcome of petitioner's trial.  (See R & R 20-33.)  In the Objections petitioner presents eight arguments in opposition to the analysis in the R & R with respect to this claim.  They are briefly discussed in turn.

First, petitioner objects to the finding that his ineffective assistance of counsel claim is procedurally defaulted.  He argues that the Magistrate Judge "misconstrues [p]etitioner's claim"

---

2009.

    [2] A copy of the Motion to Proceed Nunc Pro Tunc shall be docketed by the Deputy Clerk.

and states that appellate counsel did not "adhere to [p]etitioner's wishes" or "adequately communicate with [p]etitioner" to ensure that the layered ineffective assistance of counsel claim was properly presented in the direct appeal phase. (Pet'r Objs. 2.) In essence, petitioner argues that while his appellate counsel did raise challenges on appeal with respect to trial counsel's performance (see R & R 26 n.18), appellate counsel was also ineffective by failing to include the argument that trial counsel should have called Joanmarie Donnelly as a witness. The Magistrate Judge, in addressing this argument in the R & R, determined that under Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), petitioner was "relie[ved] from any further need to raise ineffective assistance of counsel claims on direct review[], but only as to issues of ineffectiveness that had already been 'properly raised and preserved.'" (R & R 26 (quoting Grant, 813 A.2d at 738).) Because petitioner had not yet presented this claim at the time of the Grant decision, the R & R concluded that it "had not been properly raised and preserved and therefore not saved by the Grant rule change." (Id.) The Court agrees that petitioner's claim is procedurally defaulted.

The Superior Court ruled that petitioner's ineffective assistance of counsel claim was waived due to his failure to present a layered claim. That court also determined that, "[i]n any event, even if not waived, upon review of the record we would agree with the trial court that [Volz]'s underlying allegation that trial counsel was ineffective is meritless." Volz, No. 3051 EDA 2006, slip op. at 6-7; (see R & R 22, 33). The R & R concludes that the Superior Court correctly determined that petitioner did not establish that the failure to call Donnelly to testify prejudiced petitioner's case. (See R & R 33.) The Court agrees. Accordingly, the Court approves and adopts the R & R on this issue, and overrules petitioner's objection on this ground.

Second, petitioner argues that the R & R "misconstrues [p]etitioner's claim based on a

3

miscarriage of justice to excuse a procedural default." (Pet'r Objs. 3.) Under Schlup v. Delo, 513 U.S. 298 (1995), petitioner avers that "in light of new evidence" – specifically, Donnelly's affidavits – "no reasonable juror [or fact-finder] would have found [p]etitioner guilty beyond a reasonable doubt." (Pet'r Objs. 3 (first set of brackets in original).) The R & R addresses this argument,[3] concluding, "[w]e do not find the recent affidavits of Donnelly to constitute new, reliable evidence that [petitioner] was innocent." (R & R 27 n.20.) The Court agrees, and overrules petitioner's objection on this ground.

Petitioner's third and fourth arguments both relate to the significance of Donnelly's testimony as to the identification of petitioner and his car by victims, and thus the Court will consider them at the same time. In his third argument, petitioner claims that the R & R "incorrectly concludes that [p]etitioner has failed to present any new or reliable evidence as to his claim that trial counsel failed to present material evidence pertaining to the identification of [p]etitioner and/or his vehicle," (Pet'r Objs. 3), and in his fourth argument, petitioner avers that the R & R "erroneously rejects [p]etitioner's claim that defense counsel could have used Ms. Donnelly's testimony to pursue a defense based on substantive identification, due to [p]etitioner's lack of a beard and his car[']s lack of a brown-colored top/roof," (id. at 4). The R & R fully addresses the evidence presented by petitioner, and states that "[w]ith respect to the . . . question of identification, we conclude that Donnelly's proffered testimony, according to her affidavit, would likewise have had no effect upon the outcome of Volz's case in light of the strong evidence of his guilt." (R & R 31.) The Court agrees, and approves and adopts the R & R

---

[3] The Court will not repeat the reasoning set forth in the R & R, but fully incorporates it in this Memorandum.

on these issues. (See R & R 27-33.) Petitioner's objections on these two grounds are overruled.

Petitioner's fifth, sixth, seventh, and eighth arguments all relate to the conclusion in the R & R that petitioner's claim lacks merit. In these paragraphs of his Objections, petitioner argues that the R & R: "erroneously finds a lack of evidence as to [p]etitioner's innocence beyond a reasonable doubt" given Donnelly's affidavits; "errs in finding that Ms. Donnelly's [a]ffidavit[]s do not establish a prima facie case of ineffective assistance of counsel, sufficient enough to warrant an evidentiary hearing"; "errs in speculating that trial counsel had a legitimate tactical reason for not involving Ms. Donnelly"; and "errs in determining that [p]etitioner suffered no prejudice from the failure by trial counsel to conduct a reasonable pretrial investigation and to present Ms. Donnelly." (Pet'r Objs. 5, 6, 7, 9.) The R & R addresses each of these arguments, and concludes that petitioner's claim lacks merit. The Court agrees, and approves and adopts the R & R on these issues. Petitioner's objections on these four grounds are overruled.

**B. Petitioner's Second Claim: Due Process Claim Regarding Prosecutor's Alleged Suppression of Donnelly's Testimony**

Petitioner also claims that his due process rights were violated when the prosecutor allegedly prevented Donnelly from testifying during petitioner's trial. Petitioner first presented this claim in his second PCRA petition in 2008, which was denied, and petitioner's appeal of that decision is currently pending before the Superior Court. (See R & R 34.) As a result, petitioner has not "exhausted the remedies available in the courts of the State" as required under 28 U.S.C. § 2254(b)(1)(A). (See id.) Respondents argue that, regardless of the exhaustion requirement, petitioner's claim is procedurally defaulted because it was not brought in a timely manner, and thus may be denied on that ground. (Id.) The R & R notes that it could "dispose of this claim on

5

the grounds of procedural default and the failure to . . . exhaust[] state court remedies when they were available . . . ." (Id. at 36.) However, the R & R concludes that because Donnelly's failure to testify did not prejudice petitioner's case, the claim may be denied on the merits. (Id.)

In response, petitioner presents two arguments. First, he claims that the R & R "errs in finding that [p]etitioner's claim should be denied on [the] merit[s]," and restates arguments asserted in his ineffective assistance of counsel claim with respect to the significance of Donnelly's affidavits. (Pet'r Objs. 11-12.) For the reasons stated above, the Court adopts that part of the R & R which concludes that Donnelly's failure to testify did not prejudice petitioner's case. The Court overrules petitioner's objection on this issue and denies this due process claim on the merits.

Second, petitioner avers that the R & R "incorrectly concludes that [p]etitioner's claim should possibly be disposed of due to procedural default and failure to exhaust state court remedies." (Id. at 13.) However, as this Court denies this claim on the merits, the objection is overruled.

Related to this claim, petitioner submitted a Motion to Proceed Nunc Pro Tunc with his Petition for Habeas Corpus. In that motion, petitioner argues that relief previously sought on direct appeal and through the PCRA process did not "reveal[] the true and unadulterated facts pertaining to [petitioner's] [a]ctual [i]nnocence." (Nunc Pro Tunc Mot. 4.) Petitioner asks the Court to "give meritorious consideration to claim(s) of prosecutorial misconduct/'Brady' violation of which Plaintiff diligently attempted to raise for exhaustion of State court remedy, in the past." (Id. at 4.)

The R & R fully addresses petitioner's claim of prosecutorial misconduct, which this

6

Court approves and adopts in full. While petitioner's Motion to Proceed Nunc Pro Tunc attempts to explain why this claim was not made before his second PCRA appeal in 2008, that does not alter this Court's conclusion that this claim must be denied on the merits. Thus, petitioner's Motion to Proceed Nunc Pro Tunc is denied.

    **C.**    **Petitioner's Third Claim: Due Process Claim Regarding Prosecutor's Presentation of Perjured Testimony**

Petitioner claims that his due process rights were violated when the prosecutor knowingly presented perjured testimony by Officer Gillespie and Francis Pultro during petitioner's trial. Specifically, petitioner claims that Pultro was untruthful when he testified that he was present at the time police arrived at petitioner's apartment and that there were screams from within the apartment that precipitated police entry. To support his argument, petitioner highlights the discrepancy between Pultro's testimony and Officer Gillespie's testimony that only police were present in the immediate area, and Donnelly's affidavit that there were no screams inside petitioner's apartment prior to police entry.

Petitioner did not present this due process claim on direct appeal, or in either of his PCRA petitions. While the R & R notes that this claim is subject to a finding a procedural default, it recommends denying petitioner's claim on the merits, as (1) there is no basis to conclude that Pultro was perjurious from the presence of conflicting witness testimony and (2) petitioner's allegations fall short of establishing that the prosecutor "knowingly" presented false testimony. (R & R 37-38.) In his Objections, petitioner argues that the R & R "errs in speculating that [p]etitioner's claim should be denied on the merits and that no relief should be granted." (Pet'r Objs. 14.)

The Court concludes that petitioner's objection to the analysis in the R & R is without merit, and simply rehashes arguments he has presented in his Petition and related materials. For the reasons stated in the R &R, the Court denies this claim and overrules petitioner's objection on this ground.

> D. **Petitioner's Fourth Claim: Due Process Claim Regarding Prosecutor's Misrepresentation to Court at Preliminary Hearing**

Petitioner's fourth claim is that the prosecutor denied him due process by misrepresenting to the court at a preliminary hearing that two sets of girls had previously identified petitioner, which led the court to improperly deny petitioner's request for a line-up. When presented with this issue, the Superior Court concluded that petitioner had not established that the prosecutor engaged in deliberate misconduct. Moreover, the Superior Court determined that even if the conduct had been deliberate, petitioner suffered no prejudice from the prosecutor's misstatement. (See R & R 41-43.)

Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct" and this Court may set aside a factual finding if the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." Further, the Court may only grant a writ for habeas corpus if the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The R & R concludes that petitioner "has not satisfied his burden of rebutting the presumed correctness of this state court factual finding"; the factual

determination by the state court was not "unreasonable"; and "the state court's assessment of the prejudice prong was not an unreasonable application of the United States Supreme Court standards." (R & R 44.)

In his Objections, petitioner argues that the R & R "erroneously rejects [p]etitioner's claim that the prosecution used intentional misrepresentation to effect an in-court identification" and "erroneously finds for the admission of [p]etitioner's identification from the preliminary hearing." (Pet'r Objs. 16-17.)

For the reasons stated in the R & R, the Court agrees that the factual finding of the Superior Court on the issue of intentional misconduct must stand. (See R & R 39-47.) Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness, and the Superior Court's determination was not unreasonable. Furthermore, the Superior Court's conclusion that petitioner's case was not prejudiced by the prosecutor's statement is not an unreasonable application of federal law under 28 U.S.C. § 2254(d). Accordingly, the Court approves and adopts the R & R with respect to this issue, denies this due process claim, and overrules petitioner's objections.

### E. Petitioner's Fifth Claim: Due Process Claim Regarding Voluntariness of Petitioner's Statement to Police Due to His Physical and Mental Condition

Petitioner argues that his statement to police on August 9, 1996, was involuntary because of his "mental condition and severe chronic back pain," and that Officer Gillespie was aware of both incapacities at the time of petitioner's statement. (Pet'r Mem. 24; Pet'r Reply 26.) The Superior Court rejected this claim on direct appeal, concluding that because petitioner had been advised of his Miranda rights, was not under the influence of drugs or alcohol, and understood what was going on around him, "[t]he record contains no indication that [petitioner's] mental

9

state was such that it rendered involuntary the statement he gave on August 9, 1996." Commonwealth v. Volz, No. 3413 Phila. 1998, slip. op. at 19-20, 21 (Pa. Super. Ct. Apr. 27, 2000).

In Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973), the Supreme Court identified a number of factors relevant to the question of voluntariness, including defendant's age, education, and intelligence, whether he was informed of his constitutional rights, the length of detention, the length and nature of questioning, and the use of physical punishment, such as the deprivation of food or sleep. No single factor controls whether a statement was involuntary; rather, a court must consider all relevant circumstances. Id. Applying this standard, the Magistrate Judge explained in the R & R that petitioner "provides no argument . . . concerning the circumstances that, in their totality, would have rendered his statements involuntary," and determined because petitioner "was 44 years old at the time, with a high school diploma and some college courses[,] [and was] . . . advised of his Miranda rights, . . . we cannot say that the state court's findings were an unreasonable determination of the facts." (R & R 52.) Moreover, the R & R concluded that petitioner's allegations that he was deprived water and restroom facilities, and that Officer Gillespie "used illegitimate threats and promises to overcome [p]etitioner's will" (Pet'r Reply 26), were insufficient to set aside the state court's factual findings under the "clear and convincing evidence" standard. (Id.) Finally, the R & R stated that "the Superior Court's analysis of the facts adhered to the United States Supreme Court's totality of the circumstances approach and that its application of that standard was not objectively unreasonable." (Id.)

In his Objections, petitioner advances two arguments. First, he avers that the R & R "erroneously rejects [p]etitioner's claim that the Police Statement of August 9, 1996 was

10

involuntary" on the bases that petitioner is ignorant of the appropriate federal pleading standard and his trial counsel was negligent "for excluding relevant elements from [p]etitioner's first appeal." (Pet'r Objs. 18.) However, these arguments are meritless, and the Court approves and adopts the R & R as to this issue.

Second, petitioner argues for the first time in his Objections that the August 9, 1996, statement was involuntary because he "was not aware of the offenses pertaining to [the August 9, 1996] statement" which "is evident due to the absence of [p]etitioner's signature from the statement[']s first page, [] where the offenses have been listed." (Id.) (Pet'r Objs. 19.) Petitioner also claims that "Gillespie [] lied[d] to the trial court concerning Petitioner's understanding of the circumstances – specifically, when asked if [p]etitioner had signed that first page of the statement, Gillespie explicitly said 'yes.'" (Id. (quoting Hr'g Tr. 21, March 26, 1998).)

The first page of the August 9, 1996, statement – which is not signed by petitioner – reads, "We are questioning you concerning: The kidnapping of two minor children on 08/07/96 [who were] taken to your apartment." (Pet'r's Statement of Aug. 9, 1996, at 1.) It does not include a list of charges or offenses, as petitioner argues, and page one does not contain any responses by petitioner. While the first page is unsigned, all other pages of the statement bear petitioner's signature. At trial, when asked whether petitioner signed all pages of the statement, including the first page, Gillespie testified that he had. (Hr'g Tr. 21, March 26, 1998.)

As petitioner has not raised this argument before filing his Objections, it is waived "unless the interest of justice requires" the District Court to consider it. Rule 72.1(IV)(c) of the Rules of Civil Procedure for the United States District Court for the Eastern District of

Pennsylvania provides that "[a]ll issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."

In this case, the interest of justice does not require consideration of petitioner's argument that, because petitioner did not sign the first page of the August 9, 1996 statement, on which the investigating officer stated, "[w]e are questioning you concerning: The kidnapping of two minor children on 08/07/96 [who were] taken to your apartment," it is clear that he was never informed of the charges against him. Pages two through eight of the statement – all signed by petitioner – demonstrate that petitioner understood why he was arrested. For example, Officer Gillespie asked petitioner during the interview, "as we speak now do you understand what is going on. [Are] there any questions that you have for me?" Petitioner's response was "I understand." (Pet'r's Statement of Aug. 9, 1996, at 6.) As a result, the Court overrules petitioner's objection on this ground.

### F. Petitioner's Sixth Claim: Due Process Claim Regarding Voluntariness of Petitioner's Statement Following Alleged Request for Counsel

Finally, petitioner claims that his statement to police on August 16, 1996, was involuntary because he requested an attorney and was not provided with one. In Petitioner's Memorandum of Law In Support of His Petition and in his Objections, petitioner cites to Gillespie's trial testimony, where he states, "I wanted to get a statement, but he wanted to talk to an attorney." (Hr'g Tr. 24, March 26, 1998; see Pet'r Objs. 20; Pet'r Mem. 8.)

The section of the trial transcript from which this statement is taken is far from clear. The

following section of the transcript includes questions by Marc Frumer, petitioner's trial counsel, and answers from the witness, Officer Gillespie:

> Q. Did you notify the public defender that you were taking his client to get a statement from him?
>
> A. He was represented on the case that he was arrested for [on August] 8th; and I did ask him if he wanted to speak to me, and he said that he did.
>
> Q. Did you notify the public defender that you were going to take [petitioner's] statement concerning a sex offense, in essence, a part of this case; did you notify them of that?
>
> Miss Graw: Objection.
>
> The Court: You're talking about the [August] 16th statement?
>
> Mr. Frumer: Yes, the statement that was taken on the 16th, did he call the public defender?
>
> The Court: And that was Danielle Dwyer and Amber Dunleavy?
>
> Mr. Frumer: Yes, I'm asking because he was represented by counsel. All of these cases were put together at the preliminary hearing.
>
> The Court: They hadn't made the arrest on that case.
>
> Mr. Frumer: He knows that he was represented by counsel; that's all I'm asking.
>
> The Court: Objection overruled.
>
> By Mr. Frumer:
>
> Q. Did you notify his counsel?
>
> A. I did not talk to his counsel.

13

| | | |
|---|---|---|
| The Court: | | You don't take the statement anyway; that's not your job, is that right? |
| The Witness: | | Well, I wanted to get a statement, but he wanted to talk to an attorney. |
| The Court: | | Did you know that he was represented by the public defender in that case? |
| The Witness: | | No, Sir, I did not. |

(Hr'g Tr. 23-24, March 26, 1998.)

Petitioner asks the Court to interpret this exchange as an admission that "[Officer Gillespie] wanted to get a statement, but [petitioner] wanted to talk to an attorney." However, this section of the trial testimony is ambiguous, particularly because Officer Gillespie also testified that "I did ask [petitioner] if he wanted to speak to me, and he said that he did." Further, the August 16, 1996, statement, which petitioner signed, show that Officer Gillespie asked, "Do you want to talk with a lawyer at this time, or to have a lawyer with you while we ask you questions?" (Pet'r's Statement of Aug. 16, 1996, at 2.) Petitioner wrote in the response, "[n]o." (Id.) Later in the same statement, Officer Gillespie asked, "are you willing to speak to me about an incident on the highway at Darrah and Haworth?" and petitioner answered, "[y]es." (Id. at 3.)

The Magistrate Judge recommends denial of this claim in the R & R. First, the Magistrate Judge concludes that the deficiency in petitioner's submissions renders the claim waived, which is what the Superior Court held when presented with this issue. In his Petition and supporting papers, petitioner presents only a vague suggestion that counsel was ineffective by failing to raise this defense on appeal. (See, e.g., Pet'r Mem. 25 ("[C]ounsel failed to raise a

Federal legal standard concerning the involuntary and invalid police statements . . . .")) This degree of detail is insufficient to state a claim, and the Court approves and adopts the R & R as to this issue.

Second, the R & R concludes that the claim is procedurally defaulted. Petitioner presented a related argument to the Superior Court – that the statement was invalid because the police failed to notify his counsel that he was being arrested and questioned for a separate offense. With respect to that argument, the Superior Court ruled that it was not in conformance with Pennsylvania Rule of Appellate Procedure 2119, which requires petitioner to develop arguments and cite legal authority. Commonwealth v. Volz, No. 3413 Phila. 1998, slip. op. at 22-23 (Pa. Super. Ct. Apr. 27, 2000). As a result, the Magistrate Judge determined that this claim was procedurally defaulted. (R & R 56.) The Court agrees, and approves and adopts the R & R as to this issue.

Petitioner raises a related claim on this issue in his Petition that the Superior Court did not consider – that petitioner requested counsel at the time the August 16th statement was obtained, but representation was denied. This issue is not specifically addressed in the R & R. A review of the brief filed by petitioner in the Superior Court discloses that this argument was not presented to that court on appeal. On appeal, petitioner argued only that Detective Gillespie "kn[ew] that Appellant had counsel, [but] took a statement from Appellant anyway" and that "Detective Gillespie never even notified the Defender Association, Appellant's counsel at the time of the initial arrest, prior to removing him from the Prison or prior to taking a statement." Brief of Appellant at 31, Commonwealth v. Volz, No. 3413 Phila. 1998 (Pa. Super. Ct. Apr. 27, 2000) (citations omitted). Accordingly, this claim is waived for failure to exhaust state remedies.

28 U.S.C. § 2254(b)(1)(A). The claim is therefore dismissed and petitioner's objection on this issue is overruled.

### III. CONCLUSION

Petitioner's Objections to the R & R are overruled. The Court approves and adopts the R & R as to Claims One through Five, and dismisses and denies those claims. As to that part of the Sixth Claim which argues that petitioner requested counsel but was denied the right to counsel, the Court determines that it is waived due to failure to exhaust state remedies. Otherwise, the Court approves and adopts the R & R as to the Sixth Claim, and dismisses that claim. Petitioner's Motion to Proceed Nunc Pro Tunc is denied.

An appropriate Order follows.